IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MATTHEW ALLEN TAYLOR,**

    **Plaintiff,**

v.                                                                      **Civil Action No. 3:21-CV-00425**

**CABELL COUNTY SHERIFF'S DEPARTMENT,**
**HUNTINGTON POLICE DEPARTMENT,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the ***Motion to Dismiss and Answer to Plaintiff's Complaint by Defendant Huntington Police Department*** (ECF No. 11), filed on September 7, 2021, ***Defendant Cabell County Sheriff's Department's Motion to Dismiss*** (ECF No. 15) and ***Defendant Cabell County Sheriff's Department's Memorandum of Law in Support of Motion to Dismiss*** (ECF No. 16) both filed on September 9, 2021, and the ***Motion to Dismiss with Incorporated Memorandum in Support and Answer to Plaintiff's Amended Complaint Filed on October 27, 2021 by Defendant, Huntington Police Department*** (ECF No. 31) filed on November 16, 2021. By Administrative Order entered on April 12, 2021, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3) Having examined the Complaint (ECF No. 2) and "Amendment to Original Complaint" (ECF No. 26) and pleadings of record, and having considered the pertinent legal authority, the undersigned has concluded that the ***Motion(s) to Dismiss*** should be **GRANTED** for the reasons stated *infra*:

1

## Plaintiff's Factual Allegations[1]

Plaintiff alleges that on or about September 24, 2019, he was "viciously assaulted by at least 1, most likely more, officer/officers of the Cabell County Sheriff's Department, possibly officers from the Huntington Police Department" during an arrest. Plaintiff states he was on his knees with his arms outstretch with his hands up unarmed, but law enforcement officers "tazed and "kicked" Plaintiff until he lost consciousness. Plaintiff alleges that he was transported to Cabell Huntington Hospital where he was treated for his injuries, including receiving stitches to his right temple and an IV due to blood loss. Plaintiff asserts his constitutional rights were violated and that the officers violated their oaths to "protect" and "serve". Plaintiff seeks monetary compensation for his pain and suffering that he continues to experience, compensation for his medical bills, for injunctive relief, court costs and fees, and for any other damages this Court deems fit.

## Procedural History

Following service of Plaintiff's initial Complaint, Defendant Huntington Police Department (hereinafter "HPD") filed its Motion to Dismiss and Answer on September 7, 2021 (ECF No. 11). On September 9, 2021, the Court issued a Roseboro notice[2] (ECF No. 14), directing Plaintiff to file a response to HPD's motion no later than October 5, 2021. On September 9, 2021, Defendant Cabell County Sheriff's Department (hereinafter "CCSD") filed its Motion to Dismiss

---

[1] On October 6, 2021, Plaintiff filed a subpoena requesting certain discovery materials from CCSD (ECF No. 22) following his response to Defendants' motions to dismiss (ECF No. 18) that the undersigned construed collectively as an attempt to request to amend his original complaint, as Plaintiff conceded he failed to identify any officers involved in his September 24, 2019, arrest (See ECF No. 24). Accordingly, for purposes herein, the undersigned focuses on Plaintiff's allegations set forth in his "Amendment to Original Complaint" (ECF No. 26) filed on October 27, 2021.
[2] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

2

and accompanying Memorandum of Law (ECF Nos. 15, 16). In support of its Motion, CCSD attached four exhibits concerning the underlying criminal proceeding against Plaintiff in the Circuit Court of Cabell Court, information number 20-F-4: a copy of the three- count information concerning offenses occurring on September 24, 2019 including grand larceny, fleeing in vehicle with reckless indifference, and obstructing an officer, in violation of W. Va. Code §§ 61-3-13(a), 61-5-17(f), and 61-5-17(a); a copy of the "Guilty Plea and Sentencing Order" concerning the information; a copy of the "Questions Relative to Entry of Plea of Guilty" concerning the information; and a copy of the "Final Probation Violation Order" (ECF Nos. 15-1, 15-2, 15-3, 15-4). The Court issued another Roseboro notice to Plaintiff directing him to file a response no later than October 7, 2021 (ECF No. 17).

On September 16, 2021, Plaintiff filed a hand-written response to both Motions, entitled "Plaintiff's Motion to Proceed to Trial and Ans[wer] to Defendants Motion to Dismiss" (ECF No. 18). On Sept 27, 2021, CCSD filed its Reply (ECF No. 20); on October 6, 2021, Plaintiff filed what has been docketed as his "Supplemental Response" (ECF No. 21) to both motions as well as a form Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (ECF No. 22). In response, CCSD filed its Motion to Stay, or in the Alternative, for a Protective Order on October 18, 2021 (ECF No. 23). In its Order entered on October 19, 2021, the Court denied in part and granted in part CCSD's Motion, having construed Plaintiff's October 6 pleadings as an inartful attempt to request to amend his Complaint; additionally, the Court directed CCSD to submit the discovery materials requested by Plaintiff and to copy the Court of same, to allow Plaintiff to amend his complaint and to identify those officers involved in his September 24, 2019 arrest (ECF No. 24). (See also, footnote 1, *supra*)

In response to the Court's Order, Plaintiff filed his "Amendment to Original Complaint" on October 27, 2021 (ECF No. 26). On November 16, 2021, HPD filed its Motion to Dismiss with Incorporated Memorandum in Support and Answer to Plaintiff's Amended Complaint filed on October 27, 2021 (ECF No. 31). On November 17, 2021, the Court issued another Roseboro notice to Plaintiff directing him to file a response to HPD's second motion to dismiss no later than November 30, 2021 (ECF No. 32); the Court also directed Plaintiff to appropriately amend his complaint by identifying those law enforcement officers involved in the September 24, 2019, arrest and to provide any relevant factual allegations in support of his claims (Id.). To date, no response has been filed by Plaintiff to the Court's most recent Order.

Accordingly, this matter is ripe for decision.

### HPD's Argument in Support of Dismissal

HPD contends that it is not a proper party to this action, having had no involvement in Plaintiff's arrest, even pointing out that Plaintiff himself only speculates HPD officers were "possibly" involved in his arrest. HPD further argues that, assuming Plaintiff has asserted a Section 1983 claim, it is not "a person" allowing it to be sued, and again, even if properly pleaded, no HPD officer is named as a defendant. HPD asserts additional grounds supporting dismissal, including, but not limited to, that Plaintiff fails to state a claim providing this Court jurisdiction of this matter; that HPD enjoys statutory immunity, and that Plaintiff's claims are barred by the doctrines of comparative negligence and assumption of risk.

### CCSD's Argument in Support of Dismissal

CCSD contends Plaintiff's Complaint fails to state a claim, and also fails to identify any deputies involved in the events described therein, therefore CCSD is not a legal entity capable of

4

being sued and is an improper party. Even assuming Plaintiff's Complaint can be construed as a claim against the Cabell County Commission, it fails to plead facts supporting any plausible action against it. Further, CCSD points out that Plaintiff's current claims arise from an incident where he took another's vehicle without permission, and then proceeded to get into a high-speed police chase from West Virginia into Ohio, and ended only when Plaintiff rammed his car into a police cruiser – resulting in his arrest for the charges listed in the information, *State v. Taylor*, Cabell County, No. 20-F-4. Subsequently, on January 21, 2020, Plaintiff pleaded guilty to charge of fleeing with reckless indifference, obstructing an officer, and grand larceny; in lieu of jail time, Plaintiff's sentences were suspended to allow him to attend the Western Regional Jail GOALS Program. However, Plaintiff did not complete the program, and his probation was revoked on July 6, 2021. Plaintiff has not challenged his conviction, and the conviction has not been overturned. Since Plaintiff's Complaint can best be construed as a claim under Section 1983 for excessive force, Heck v. Humphrey, 512 U.S. 477 (1994) bars such claims.

## Plaintiff's Response in Opposition

Plaintiff asks the Court to deny the motions to dismiss, insisting that his constitutional rights were violated. He concedes that his Complaint does not name the individual officers, however, he asserts that the police report from the incident provides their names and badge numbers to identify them. Plaintiff argues that none of the defenses provided in the motions survive because he was an unarmed citizen and was not a threat to anyone.

## CCSD Reply

CCSD notes that Plaintiff failed to respond to any of its arguments for dismissal, let alone provide any additional facts supporting his claims. Therefore, Plaintiff's responses can be

interpreted as an abandonment or waiver of his claims and concedes to CCSD's arguments.

## Plaintiff's 'Surreply'

Plaintiff asks this Court to consider his claims of assault and excessive force as probable cause to allow this case to proceed to trial. Plaintiff indicates that defense counsel is taking advantage of his indigency status; Plaintiff also states that defense counsel has "already committed perjury" (ECF No. 21 at 2) by alleging Plaintiff did not complete the GOALS Program, because he did complete the program and has a certificate to prove it.

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction,

however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W. Va. 2007) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Discussion**

Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

With respect to HPD, there are no factual allegations against this Defendant at all. Plaintiff does not contradict HPD's assertion that Plaintiff improperly named it in this suit[3], and indeed, Plaintiff does not identify a single HPD officer involved in his arrest and does not offer any facts related to HPD that are material to his claims of excessive force that would require a jury's resolution. Notably, as set forth in CCSD's response to Plaintiff's "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" (ECF No. 22), described in further detail *infra* and attached to this Proposed Findings and Recommendation[4], it appears no HPD officer was directly involved in Plaintiff's arrest, aside from using a spike strip to disable the stolen vehicle Plaintiff was driving.

Therefore, as an initial matter, it is **RECOMMENDED** that HPD's ***Motion(s) to Dismiss*** (ECF No. 11, 31) should be **GRANTED** with prejudice.

Converting Defendant CCSD's Motion to Dismiss

"In addressing a motion to dismiss, the court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice." McDowell v. Town of Sophia, 2012 WL 3778837 (S.D.W. Va. Aug. 30, 2012)(J. Berger)(citations omitted); also see Wittholh v. Federal Insurance Co., 164 Fed.Appx. 395, * 1 (4th Cir. 2006)(when considering a motion to dismiss, "a court may consider official public records"); Pueschel v. United States, 369 F.3d 345, 354 n. 3 (4th Cir. 2004)("If, on a motion . . . to

---

[3] Although a municipality can be liable under 1983 for maintaining a custom of policy that results in a violation of a person's constitutional rights, Plaintiff makes no such allegations against either HPD or CCSD, accordingly, Plaintiff's claims against HPD should be dismissed on this basis as well. See, Newbrough v. Piedmont Regional Jail, 822 F.Supp.2d 558, 581 (E.D. Va. 2011)(finding that an entity defendant could be liable "for maintaining a municipal custom of constitutionally deficient care that caused [plaintiff's] injury"); see also, Moore v. Huntington Police Department, 2012 WL 3860589 (S.D.W. Va. Sept. 5, 2012)(Eifert, M.J.).

[4] CCSD was ordered to provide a copy to the undersigned for review. (ECF No. 24)

dismiss . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); American Chiropractic Association v. Trigon Health Care, Inc., 367 F.3d 212, 234 (4th Cir. 2004)("[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiff's do not challenge its authenticity."). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

As noted *supra*, CCSD attached documents from the State court proceedings to its motion to dismiss. See, e.g., Zavolta v. Henderson, 2011 WL 1790492, * 2 (N.D.W. Va. May 10, 2011)("Affidavits are document outside the pleadings and this Court must convert the motion to dismiss to a motion for summary judgment if it is to consider the . . . affidavits.") Thus, the Court must consider whether Plaintiff "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2nd Cir. 1985). In the instant case, though it would be presumptuous to assume that Plaintiff reasonably recognized that the motion to dismiss might be converted into one for summary judgment based on his *pro se*, and ostensibly, unsophisticated litigant status, on the other hand, it does not appear that CCSD's allegations took Plaintiff by surprise or that he was deprived of a reasonable opportunity to meet facts presented outside of the pleadings. In Plaintiff's "Supplemental Response", he disputed CCSD's allegation that he did not complete the GOALS

9

program, and that he is a "proud graduate", having completed the "WRJ GOALS" program and has a certificate as proof. (ECF No. 21) Plaintiff also asserted that he was filing subpoenas to gather evidence to present his case.[5] (Id.) As discussed *supra*, this Court permitted the subpoena and ordered CCSD to respond to Plaintiff's subpoena, thereby providing Plaintiff with a reasonable opportunity to meet the facts presented outside of the pleadings. Even further, this Court provided additional time to Plaintiff to amend his complaint(s) and provide additional factual support to his claims, but Plaintiff failed to do so, despite having been given this opportunity. The undersigned, therefore, finds that Plaintiff was given a reasonable opportunity to present all the material that was pertinent to the motions, and not deprived of a reasonable opportunity to meet facts outside the pleadings. Accordingly, the undersigned finds that CCSD's Motion to Dismiss should be construed as a Motion for Summary Judgment.

On that note, the Court has long recognized that summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp.

---

[5] On November 1, 2021, Plaintiff also filed what has been docketed as a "Letter-Form Motion" for subpoena for medical records from the Western Regional Jail (ECF No. 27). It is noted that this "Motion" also refers to civil action number 3:21-cv-539, *Matthew Allen Taylor v. Prime Care Medical, Inc., Western Regional Jail, and West Virginia Department of Corrections and Rehabilitation*, which is pending before this Court and concerns a prison condition claim filed by Plaintiff on September 24, 2021. This subsequent civil action concerns Plaintiff's allegations of lack of treatment for his prior exposure to HIV and request for bloodwork to confirm a diagnosis (See ECF No. 2); it is further noted that Plaintiff also filed his subpoena requests to the Western Regional Jail, as he did in the instant case on November 1, 2021 (ECF No. 6), and that the Clerk of Court issued two blank subpoenas to Plaintiff. Since Plaintiff has alleged in the instant case that he was treated at the Cabell Huntington Hospital following his arrest in September 2019, and that he only recently complains of lack of adequate medical care since his incarceration at the Western Regional Jail in June or July 2021, it is clear that Plaintiff's "Letter-Form Motion" concerns matters irrelevant to the issues raised herein. Accordingly, the undersigned hereby **ORDERS** the "Letter-Form Motion" (ECF No. 27) is **DENIED** as **MOOT**.

v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

Therefore, with respect to the outside facts alleged by CCSD, Plaintiff does not offer any dispute. Plaintiff does not even counter CCSD's argument that it an improper party in this lawsuit. Indeed, despite being provided additional time to appropriately amend his Complaint(s), Plaintiff has failed to identify any of the CCSD deputies involved in his September 24, 2019, arrest. Instead, Plaintiff merely alleges "naked assertion[s]" against CCSD which are verboten pursuant to the jurisprudence espoused under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, of significance to this action, Plaintiff conveniently omits the precipitating events leading up to his eventual, yet predictable, arrest. More importantly, Plaintiff does not dispute CCSD'S narrative of events leading up to his arrest:

1. On September 24, 2019, CCSD deputies responded to a BOLO (**B**e **O**n the **L**ook**O**ut) for a stolen white 2011 Chevrolet Silverado with a 12-foot trailer attached to it.

11

2. Cabell County dispatch advised that the vehicle was stolen in Huntington, West Virginia and that a firearm was inside.

3. During CCSD's response to the stolen vehicle call, a law enforcement officer observed Plaintiff hit another vehicle in a construction area. The trailer was subsequently located, and noted to be damaged.

4. Through the use of the Silverado's "ONSTAR" feature, law enforcement was able to track the stolen vehicle, which lead to a pursuit across states lines.

5. West Virginia law enforcement notified Ohio law enforcement of the fleeing Silverado entering their jurisdiction.

6. As Plaintiff fled to Ohio, he struck an Ohio police cruiser "head-on" that had been responding to the fleeing Silverado call – it was reported that "it appeared that the suspect turned into the deputy's vehicle on purpose to evade capture and possibly injure the deputy."

7. The Ohio police cruiser sustained heavy front-end damage, rendering it immobile.

8. After striking the cruiser, Plaintiff traveled back into West Virginia.

9. HPD officers were able to use spike strips to try to disable the fleeing Silverado.

10. Plaintiff was reported to be heading the wrong way into traffic during his flight.

11. Plaintiff was observed to have pointed what appeared to be a firearm out of the Silverado at Deputy Brady Hinchman.[6]

12. It was reported that Plaintiff attempted to strike several HPD cruisers that were responding to the scene.

---

[6] In the "Supporting Report" provided by Deputy James Johnston, it was noted that a .38 revolver was located in the middle console.

13. When the Silverado was finally disabled, it was reported that when approached by officers, Plaintiff refused to comply with numerous commands to exit the Silverado.

14. When Plaintiff did exit the Silverado and ordered to the ground, he did not provide his hands to be restrained.

15. Deputy Hinchman "deployed 3 strikes with his asp baton to [Plaintiff's] right leg in order to gain compliance."

16. Deputy Hinchman was able to gain control of Plaintiff's right hand, but Plaintiff would not provide his other hand.

17. Deputy Lisa Templeton deployed her taser to subdue Plaintiff.

18. Plaintiff was taken into custody.

19. Plaintiff was then taken to the hospital to be medically cleared, where he reportedly admitted to drinking alcohol and smoking meth prior to driving.

20. Plaintiff was then transported to the jail pending arraignment by a magistrate.

<u>Excessive Force</u>

The Fourth Amendment guarantees citizens the right to be free from unreasonable seizures, which bars the use of excessive force by law enforcement officers to effectuate a seizure. <u>Jones v. Buchanan</u>, 325 F.3d 520, 527 (4th Cir. 2003) A claim that law enforcement officials used excessive force in the course of making an arrest or other seizure of a person is analyzed under an "objective reasonableness" standard. <u>Id</u>. (quoting <u>Graham v. O'Connor</u>, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In determining what is reasonable, a court must carefully balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. 1865 (quoting

Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). That balancing act is accomplished by focusing on the facts and circumstances of each case, taking into account "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865) "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003) (citing Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)).

A court must consider the reasonableness of the force employed " 'in full context, with an eye toward the proportionality of the force in light of all the circumstances.' " Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (quoting Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005)). The Fourth Circuit has recognized that " 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—[and] we take care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging the officer's conduct with the 20/20 vision of hindsight.' " Cooper v. Sheehan, 735 F.3d 153, 158–159 (4th Cir. 2013) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).

Under the guidance provided by this jurisprudence, the situation before this Court presents a criminal suspect's flight from law enforcement with a stolen vehicle – a 2011 Silverado truck with an attached 12-foot trailer. Plaintiff proceeded to flee from law enforcement leading to a high-speed chase from West Virginia into Ohio, and back into West Virginia. In addition to causing damage to the 12-foot trailer during his flight, Plaintiff struck an Ohio police cruiser head-on, rendering it immobile, and attempted to crash into additional police cruisers. Plaintiff clearly caused damage to the stolen Silverado during his flight. Most importantly, Plaintiff also reportedly

14

pointed what appeared to be a firearm at law enforcement, and a revolver was later recovered from the Silverado's middle console. Plaintiff refused to comply with numerous orders to exit the vehicle, and also refused to provide his hands to law enforcement when on the ground. Only through the use of a baton and taser were law enforcement able to effect Plaintiff's arrest. Plaintiff was taken to a hospital where he admitted to drinking and using drugs prior to driving the Silverado. Upon being medically cleared, Plaintiff was taken to a magistrate for arraignment.[7]

Moreover, Plaintiff has not disputed CCSD's assertion that after the events of September 24, 2019, he later pled guilty on January 21, 2020, by information to the felony offenses of "Grand Larceny" and "Fleeing in a Vehicle with Reckless Indifference" and to the misdemeanor offense of "Obstructing" (See ECF Nos. 15-1, 15-2). Notably, these offenses stem from the events occurring on September 24, 2019: the "Grand Larceny" offense concerns the stolen Silverado and the other two offenses concern Plaintiff's flight using the stolen Silverado on multiple roadways in Huntington, West Virginia and failure to heed law enforcement signals to stop. (Id.) Plaintiff also does not dispute that during his plea hearing before the Cabell County Circuit Court Judge, he provided a sworn written statement for the basis for his guilty plea: "I made bad decisions that I regret. I took someone else's vehicle without permission. When the cops tried to stop me I fled

---

[7] Although Plaintiff has alleged receiving serious injuries during the arrest, there are no medical records concerning his injuries before this Court. It is interesting that on September 16, 2021, Plaintiff's Letter to the Clerk of Court was docketed, in which he requested subpoenas to Cabell Huntington Hospital in addition to CCSD, HPD as well as WSAZ News Channel 3, and that the Clerk issued 4 blank subpoenas to Plaintiff (ECF No. 19) Though Plaintiff served his subpoena upon CCSD (ECF No. 22) on October 6, 2021, there is no evidence he attempted to serve HPD or Cabell Huntington Hospital. However, on November 5, 2021, Plaintiff filed a "Motion" related to the form "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" to WSAZ News Channel 3 for the video footage concerning the "9-24-2019 of the arrest and arraignment of [Plaintiff]" which "was aired on the news 9 24 19" (ECF No. 29). Nevertheless, since Plaintiff failed to abide by this Court's Order to properly amend his complaint, and identify the law enforcement officers involved in his September 24, 2019, arrest, and having found that Plaintiff's excessive force claim fails for the reasons set forth herein, the undersigned hereby **ORDERS** this "Motion" is **DENIED** as **MOOT**.

and didn't pull over." (See ECF No. 15-3 at 5-6)

To reiterate, Plaintiff has been silent as to the validity of these assertions, and it bears mentioning that "[a] party's silence . . . may bar that party from asserting facts which would allow him to prevail in litigation which will have severe financial consequences for the loser. Silence may also create inferences which are relevant and adverse to the party maintaining such silence." See In re Grand Jury Subpoena, 836 F.2d 1468, 1472 (4th Cir. 1988). Despite Plaintiff's allegations that he complied with law enforcement during his arrest – to the extent that he was "unarmed" and "not posing a threat to anyone" (ECF No. 26) – Plaintiff completely disregards CCSD's factual allegations that he was actively fleeing in a stolen vehicle, causing widespread property damage, and attempting to seriously injure or threaten the lives of responding law enforcement officers. Plaintiff also fails to appreciate that he risked causing severe injury to innocent bystanders. Further, Plaintiff neglects to mention, let alone acknowledge, these factual allegations prior to his arrest, which, given the description provided by CCSD, is a far cry from "not posing a threat to anyone." This backdrop behind Plaintiff's arrest demonstrates the "objective reasonableness" standard endorsed by the Supreme Court and the Fourth Circuit. Graham, 490 U.S. at 399; Yates, 817 F.3d at 885. The fact that Plaintiff fails to put forth the necessary factual support for the alleged injuries that he sustained during his arrest underscores that CCSD's use of an asp baton and taser was reasonable force to effectuate the arrest under the totality of circumstances presented in this case. Beyond Plaintiff's allegations that he suffered injuries from the arrest, the undisputed fact is that he was treated, and released back to the custody of law enforcement. Plaintiff's subsequent guilty plea to the offenses charged in the information in the Cabell County Circuit Court further belie his

assertion that excessive force was employed during his arrest.[8]

In short, Plaintiff has not demonstrated the factual support necessary to defeat CCSD's motion, only relying upon specious, conclusory and self-serving allegations that wholly ignore his prior flight with a stolen vehicle, all the while causing damage in his wake, let alone the presence and ostensible threat of a firearm. Clearly, CCSD deputies, as well as HPD officers and even those in bordering Ohio, had reasonably believed Plaintiff was an immediate threat to both law enforcement officers as well as the general public. Accordingly, having applied the Graham test for objective reasonableness, the undersigned **FINDS** the use of force to effectuate Plaintiff's arrest on September 24, 2019, was objectively reasonable.

Based on the foregoing, the undersigned **RECOMMENDS** that CCSD is entitled to summary dismissal of this matter.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** *__Motion to Dismiss and Answer to Plaintiff's Complaint by Defendant Huntington Police Department__* (ECF No. 11) as well as its second motion to dismiss (ECF No. 31), and *__Defendant Cabell County Sheriff's Department's Motion to Dismiss__* (ECF No. 15).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert

---

[8] It is also telling that Plaintiff filed this action in the same month the Cabell County Circuit Court revoked his probation for violating the terms and conditions of same – which Plaintiff admitted on the record during those proceedings. (See ECF No. 15-4) Thus to the extent Plaintiff has accuses CCSD of "attempt of chariter [*sic*] asasination/deffimation [*sic*]" because CCSD alleged he failed to complete the GOALS program that resulted in the revocation of probation (ECF No. 21 at 2), the undersigned finds this argument is of no moment and irrelevant to his excessive force claim under Section 1983.

C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on any opposing parties, District Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to the *pro se* Plaintiff and to counsel of record.

ENTER: December 15, 2021.



Omar J. Aboulhosn
United States Magistrate Judge